# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ADOPTIVE FAMILY #1 AND THEIR
DAUGHTER A, et al.,
Plaintiffs,

Case No. 1:18-cv-179
Dlott, J.
Litkovitz, M.J.

vs.

WARREN COUNTY, OHIO/WARREN
COUNTY BOARD OF
COMMISSIONERS,
Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiffs Adoptive Families #1 and #2 are families who have adopted children with special needs after serving them as foster parents. They seek to represent a class of all current and potential adoptive parents, and their adopted children, who are eligible to receive subsidies under Title IV-E of the Adoption Assistance and Child Welfare Act and who fall under the jurisdiction of Warren County Children Services. Plaintiffs allege that defendant Warren County Board of Commissioners (Warren County) is violating the First and Fourteenth Amendments to the United State Constitution and Title IV-E of the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 670, et seq., by denying eligible children assistance and obstructing families' access to such assistance. This matter is before the Court on defendant Warren County's motion for judgment on the pleadings (Doc. 15), plaintiffs' memorandum in opposition (Doc. 18), and defendant's reply memorandum (Doc. 21).

## I. Complaint

Plaintiffs' complaint alleges the following facts: Children in Warren County, and in the State of Ohio generally, who cannot safely remain in their own homes are placed in foster care, which is a temporary living situation. Children who cannot be placed in a "kinship care" arrangement with suitable relatives are placed in a licensed foster care setting, including foster

homes. Foster parents receive subsidies from Warren County to help provide for the children in their care. The amount is determined by the county. This is a per diem amount, determined by the level of care the child requires. When a court determines that returning home is not in a child's best interest, the court may grant permanent custody to the local agency, and the children can become legally available for adoption. In some cases, foster children who become legally available for adoption are adopted by their foster parents. Warren County is charged with issuing adoption assistance payments to eligible children under state and federal law.

Mother and Father of Adoptive Family #1 received their child A. as a foster care placement on May 16, 2013 when she was nine years old. She has been with them ever since and is now fourteen. A. has special needs because she was more than six years old when she became available for adoption. A. also has a social or medical history which includes repeated sexual abuse and that establishes a substantial risk of developing a developmental disability, developmental delay, mental illness, or medical condition. Child A. became legally available for adoption on September 29, 2014. At the time, defendant told Mother and Father #1 that A. was "unadoptable" and that if they did not adopt her, no one would. She had been in Family #1's home for more than six consecutive months. Before her adoption was finalized, Mother and Father #1 asked about adoption assistance. They were told that "she doesn't qualify." Mother and Father #1 adopted A. on August 18, 2015.

When they were fostering A., Mother and Father #1 received $25-$35 per day to help provide for her as a foster child. This allowed Mother #1 to work part-time, giving her more time to care for A. She and her husband thought this was in A.'s best interest. It also helped them cover activities for A. and the increased expenses of adding another person to the household.

When they adopted A., Mother and Father #1 lost their foster care subsidy and were awarded $0 adoption assistance. Family #1 acquiesced to an arrangement where their daughter received no adoption assistance only because defendant had lied and misrepresented their child's eligibility for assistance.

Adoptive Family #1 currently receives $0 in adoption assistance for A., despite her eligibility. If A. were still in foster care through Warren County today, she would receive a per diem amount totaling at least $700 per month, based on contemporaneous rates. A. is now a teenager but she is still afraid to be home alone because of her history of abuse. She is paranoid about checking locks on the doors and has had panic attacks when out with her family. Mother and Father #1 want to help their daughter feel more secure and reduce her anxiety.

Mother and Father #1 want to send A. to a private, all-girls high school to enhance A.'s sense of security, but they do not think they will be able to afford it. This year, A. participated in sports at school, but Mother and Father #1 were not able to afford competitive swim team because it was too expensive. They want to get her back in more activities, including swim team, because it helps with her self-image and self-confidence. A. has recently been diagnosed with depression, which will mean therapy and medication for A. Mother and Father #1 think being back on the swim team will help with A's depression as well. Adoption assistance would also help Adoptive Family #1 meet A's anticipated everyday and future expenses. Mother and Father #1 fear retaliation by Warren County based on their past experience with the County.

Mother and Father of Adoptive Family #2 received children B. and C. through foster care placement on September 26, 2013. Child B. was five years old and Child C. was six months old at the time. The children have been with Mother and Father #2 ever since and are now ten years old and five years old. Child B. has special needs. He has been diagnosed with ADHD, which is

treated with medication and therapy. B. also struggles with interpersonal relationships and school. When Mother and Father #2 received C., he had a flat head due to neglect and was sick constantly. Since then, his health has improved. He is well-adjusted and very mature for his age.

Children B. and C. both have special needs because they were adopted together as a sibling group. B. and C. also both have a social or medical history, which includes a family medical history of depression, bipolar disorder, dementia, and drug and alcohol use and a family social history of time in jail, that establishes a substantial risk of developing a developmental disability, developmental delay, mental illness, or medical condition. Additionally, C. was born premature and remained hospitalized for several weeks.

Children B. and C. became legally available for adoption in June 2015. Mother and Father #2 adopted both boys on April 7, 2016. Mother and Father #2 had established strong emotional ties with B. and C. while they were in foster care.

Before the adoptions were finalized, Mother and Father #2 asked about adoption assistance. Defendant told them that C. did not qualify because he did not have a diagnosis. Warren County declined to award them any assistance for C. Defendant told them that B. qualified for assistance and awarded the family $250 per month based on his diagnosis. Warren County limited the award to that amount because it was the most Adoptive Family #1 could receive without defendant having to contribute its own funds. Defendant did not consider the family's circumstances and B.'s needs when calculating the amount to award but based the amount solely on its intent to avoid paying out any County funds.

When Mother and Father #2 were fostering B. and C., they received free daycare and $13 per day for each child to help provide for them. If B. and C. were still in foster care through

Warren County today, they would each receive a per diem amount totaling at least $700 per month, based on contemporaneous rates. Adoptive Family #2 currently receives $0 in adoption assistance for C. despite his eligibility. They currently receive $250 in adoption assistance for B., but this amount does not take the family's circumstances or B.'s needs into account. Family #2 acquiesced to this arrangement only because defendant had lied and misrepresented their child's eligibility to for assistance. An award of adoption assistance for C. and additional adoption assistance for B. would help the family pay for B.'s therapy, extra-curricular activities for B. and C., and tutoring and other current and anticipated future expense for B. and C. Mother and Father #2 fear retaliation by Warren County based on their past experience with the County.

Plaintiffs bring this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against defendant Warren County for violations of the Adoption Assistance and Child Welfare Act and for violations of plaintiffs' familial association and due process rights under the United States Constitution. Plaintiffs allege that defendant violated their rights under 42 U.S.C. § 673 when it denied adoption assistance to entitled children and obstructed plaintiffs' access to such assistance. Plaintiffs also allege that defendant violated their rights under the First and Fourteenth Amendments to the United States Constitution, including the right of familial association and their right to due process of law.

## II. Statutory framework for adoption of special needs children

Title IV-E of the Social Security Act, 42 U.S.C. § 670 et seq., governs adoption assistance subsidies for adoptive parents. To receive federal funding under Title IV-E, states must develop a plan for adoption assistance and obtain approval of that plan from the United States Secretary of Health and Human Services. 42 U.S.C. § 671. A state with an approved plan "shall enter into adoption assistance agreements . . . with the adoptive parents of children with

special needs." 42 U.S.C. § 673(a)(1)(A). A child with special needs is one who is available for adoption and who meets certain criteria that have traditionally made children less likely to be adopted. These criteria include, among others: the child is a part of a sibling group being adopted together, or is being placed in the same adoptive home as a sibling previously adopted; the child is a member of a minority, racial or ethnic group making it difficult to place the child for adoption; the child is six years old or older; or the child has been in the prospective adoptive home for at least six months and would experience severe separation anxiety if removed from the home and placed in another setting. *See* 42 U.S.C. § 673(c); OAC 5101:2-49-03.

Adoption assistance payments are governed by § 673(a)(1)(B), which provides:

Under any adoption assistance agreement entered into by a State with parents who adopt a child with special needs, the State - -

(i)     shall make payments of nonrecurring adoption expenses incurred by or on behalf of such parents in connection with the adoption of such child, directly through the State agency or through another public or nonprofit private agency, in amounts determined under paragraph (3), and

(ii)    in any case where the child meets the requirements of paragraph (2), may make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined.

42 U.S.C. § 673(a)(1)(B). Adoption assistance payments:

shall be determined through agreement between the adoptive parents and the State . . ., which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents . . ., depending upon changes in such circumstances. . . .

42 U.S.C. § 673(a)(3).

Ohio has an approved state plan for adoption assistance and has agreed to be bound by all of the federal requirements under Title IV-E. Defendant Warren County administers adoption assistance subsidies through its public children services agency, Warren County Children

Services. *See* OAC 5101:2-49-01. Warren County Children Services determines the initial and continuing eligibility for adoption assistance subsidies. *Id.*

## III. Legal Standard

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted)). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**IV. Defendant's motion for judgment on the pleadings should be granted in part and denied in part.**

Defendant Warren County moves for judgment on the pleadings under Fed. Rule Civ. P. 12(c) on all but one claim.[1] In its motion, defendant argues that plaintiffs' complaint should be dismissed because:

1. Plaintiffs do not have an enforceable right to a minimum amount of an adoption assistance subsidy under 42 U.S.C. § 673(a)(1)(B)(ii), as this section gives States discretion in determining when and in what amounts to provide adoption assistance subsidies.

2. Plaintiffs have failed to exhaust their administrative remedies.

3. Plaintiffs' complaint fails to state a claim for the violation of the right of familial association, where there are no facts showing that plaintiffs were deprived of the care, custody or management of their children.

(Doc. 15 at 1). Defendant explains that with respect to plaintiffs' claim under § 673, it seeks a determination on "the question of whether the provision of adoption assistance subsidies (and the amount of subsidies) under 42 U.S.C. § 673(a)(1)(B)(ii) is within the discretion of states." (*Id.* at 14). Defendant acknowledges that plaintiffs have a "federal right granted to them under 42 U.S.C. § 673 with respect to an adoption agreement . . . to negotiate and enter into adoption assistance agreements" with defendant, but defendant contends plaintiffs were not denied this right. (*Id.* at 11). Defendant argues that if plaintiffs were dissatisfied with the amounts they negotiated, they have administrative remedies available to them. (*Id.* at 11-12).

---

[1] Defendant explains in its reply memorandum that it is not moving for judgment on the pleadings on plaintiffs' claim that "Warren County employees made misrepresentation[s] regarding the availability of adoption assistance." (Doc. 21 at 14). Defendant denies this allegation but concedes plaintiffs have stated a claim for relief on this issue.

**A. Whether plaintiffs have an enforceable right to an adoption assistance subsidy under 42 U.S.C. § 673.**

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citations omitted). In determining whether a particular statutory provision gives rise to a federal right, courts consider three factors: (1) whether Congress "intended that the provision in question benefit the plaintiff"; (2) whether "the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) and whether the statute "unambiguously impose[s] a binding obligation on the States." *Id.* at 340-41 (citations omitted). "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* at 341 (citations omitted).

Defendant argues that plaintiffs do not have an enforceable right under the statute because 42 U.S.C. § 673 does not impose binding obligations on the state to pay adoption assistance payments to parents who adopt special needs children. (Doc. 15). Defendant asserts that in the absence of statutory language unambiguously imposing a binding obligation on the states, plaintiffs do not have an individually enforceable right to adoption assistance subsidies under 42 U.S.C. § 1983. (Doc. 15 at 8, citing *Blessing*, 520 U.S. at 340-41). Defendant contends that the plain language of 42 U.S.C. § 673(a)(1)(B)(ii), which provides that states receiving Title IV-E money "may" provide adoption assistance subsidies to eligible individuals, demonstrates that a state has the discretion to decide in what cases and in what amounts to provide adoption assistance payments. (*Id.* at 9-10). Defendant argues that contrary to plaintiff's interpretation of the statutory language, use of the precatory term "may" unambiguously means that adoption assistance payments to "special needs" children are neither mandatory nor binding on the states

9

but instead payment of a subsidy is within the discretion of the state administering Title IV-E funds. (Doc. 15 at 9).

Plaintiffs allege that defendant violated their rights under 42 U.S.C. § 673 when it obstructed their access to adoption assistance and denied such assistance to children who qualify. (Doc. 18). Plaintiffs claim that adoptive parents and their eligible children have an individually enforceable right to adoption assistance payments under Title IV-E. Plaintiffs contend that § 673 creates an individually enforceable right because it focuses on individual recipients, confers a monetary entitlement upon qualified families, and uses mandatory language that evinces binding obligations on a state. (*Id*. at 16, citing *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017); *ASW v. Oregon*, 424 F.3d 970 (9th Cir. 2005)). Plaintiffs acknowledge that 42 U.S.C. § 673(a)(1) and the Ohio Administrative Code use precatory language by establishing that the state "may" make adoption assistance payments and in some instances the amount of the subsidy can be $0. (Doc. 18 at 7, 8, 10, 22). However, plaintiffs argue the precatory terms must be considered in the context of the statute as a whole, which includes mandatory "shall" language and requires the state to comply with certain procedures when establishing the amount of the adoption assistance payments. (*Id*. at 8-10, 15-18). Plaintiffs claim that read as a whole, the statute mandates that if the state enters into an adoption assistance agreement, the state does not have "unfettered discretion" to determine the amount of adoption assistance payments to be made under the agreement; instead, the state must afford families the process they are due under the statute by "fairly negotiating subsidies." (*Id*. at 6, 8). Plaintiffs allege that defendant violated their rights under the statute by (1) misrepresenting Child A.'s eligibility for adoption assistance and failing to negotiate an award, (2) misrepresenting Child C.'s eligibility for assistance, and (3) failing to

take the statutory criteria into account when negotiating Child B.'s adoption assistance agreement. (*Id.* at 20).

There are three relevant statutory provisions that govern whether plaintiffs have an enforceable right to adoption assistance payments. Section § 673(a)(1) governs adoption assistance agreements:

> (a) Agreements with adoptive parents of children with special needs; State payments; qualifying children; amount of payments; changes in circumstances; placement period prior to adoption; nonrecurring adoption expenses
>
> > (1)(A) Each State having a plan approved under this part *shall enter into adoption assistance agreements* (as defined in section 675(3) of this title) with the adoptive parents of children with special needs.
> >
> > (B) Under any adoption assistance agreement entered into by a State with parents who adopt a child with special needs, the State- -
> >
> > > (i) *shall* make payments of nonrecurring adoption expenses incurred by or on behalf of such parents in connection with the adoption of such child, directly through the State agency or through another public or nonprofit private agency, in amounts determined under paragraph (3), and
> > >
> > > (ii) in any case where the child meets the requirements of paragraph (2), *may* make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined.

42 U.S.C. § 673(a)(1) (emphasis added). The payment of adoption assistance is governed by § 673(a)(3):

> The amount of the payments to be made in any case under clauses (i) and (ii) of paragraph (1)(B) *shall* be determined through agreement between the adoptive parents and the State or local agency administering the program under this section, which *shall* take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents (which may be specified in the adoption assistance agreement), depending upon changes in such circumstances. . . .

42 U.S.C. § 673(a)(3) (emphasis added).

Adoption assistance agreements are defined under § 675(3):

The term "adoption assistance agreement" means a written agreement, *binding on the parties to the agreement, between the State agency,* other relevant agencies, *and the prospective adoptive parents of a minor child* which at a minimum (A) specifies the nature and amount of any payments, services, and assistance to be provided under such agreement, and (B) stipulates that the agreement shall remain in effect regardless of the State of which the adoptive parents are residents at any given time. . . .

42 U.S.C. § 675(3) (emphasis added).

Defendant focuses on § 673(a)(1)(B)(ii) to argue that plaintiffs do not have a federally enforceable right to adoption assistance payments. Defendant challenges whether the third *Blessing* factor - the statute "unambiguously impose[s] a binding obligation on the States" - is satisfied in light of the precatory "may" language of that provision. (Doc. 15 at 8-12, citing 42 U.S.C. § 673(a)(1)(B)(ii)) ("the State . . . *may* make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency. . . .") (emphasis added). *See Blessing*, 520 U.S. at 341. Defendant argues that if Congress's intent had been to make adoption assistance payments mandatory, it would have used the word "shall" instead of "may" with respect to the payment of both nonrecurring adoption expenses under § 673(a)(1)(B)(i) and adoption assistance payments under § 673(a)(1)(B)(ii). (*Id.* at 9). Defendant contends that Congress's failure to do so demonstrates that the words "may" and "shall" in the statute were intended to have their usual meanings. (*Id.* at 9-10).

In arguing that plaintiffs do not have a federally enforceable right to adoption assistance payments in a certain amount under § 673, defendant construes plaintiffs' claims too narrowly. Defendant seeks to rebut a claim that adoptive parents of special needs children "have an absolute right to receive some level of adoption assistance . . . and to some minimum amount of money in adoption assistance payments that Warren County must provide." (Doc. 15 at 10, 14,

citing *Ninemire v. Kansas Dept. of Soc. and Rehab. Services,* 162 P.3d 22, 26 (Kan. July 13,

2007) (holding the state was not required to pay a monthly subsidy simply because the child was

eligible); *Rinehart v. Central Eligibility Unit*, No 1:16-cv-2987, 2018 U.S. Dist. LEXIS 43898

(S.D. Ind. March 16, 2018) (holding that there was no legal basis for adoptive parents' claim that

a $0 subsidy violated § 673 or the Constitution)). This is not an accurate characterization of

plaintiffs' claims. Plaintiffs do not claim that the state has no discretion to determine adoption

assistance payments for eligible special needs children; that defendant must make an adoption

assistance payment of some amount to each eligible child; or that the statute prohibits defendant

from deciding to award $0 in adoption assistance after engaging in the process set forth in the

statute. Plaintiffs concede that under § 673 and the Ohio Administrative Code, the state "may"

make adoption assistance payments and in some instances the amount of the subsidy can be $0.

Plaintiffs instead argue that the "may" language of the statute "does not make monthly payments

discretionary, but rather is a reflection of the fact that some children will be eligible for such

payments while others are not." (Doc. 1, ¶ 23). Plaintiffs flesh out this claim in their opposing

memorandum, alleging that if the state enters into an adoption assistance agreement, the state

does not have "unfettered discretion" to determine the amount of adoption assistance payments

to be made under the agreement but must afford the families the process they are due under the

statute by entering into an adoption assistance agreement and "fairly negotiat[ing] subsidies."

(Doc. 18 at 6, 8). Plaintiffs argue the state's discretion is constrained to the extent the state must

(1) fairly negotiate with the adopting parents to reach an agreement as to the amount of the

adoption assistance payments, and (2) take into consideration the circumstances of the adopting

parents and the needs of the child in establishing the payment. *See* 42 U.S.C. § 673(a)(3). (Doc.

18 at 8-10). Plaintiffs contend that defendant did not comply with its statutory obligations when

exercising its discretion in their cases because defendant failed to provide "the statutory process required to arrive at an appropriate amount of assistance" and to apply the "factors required by the statute, through mutual negotiation"; misled plaintiffs as to whether they qualified for adoption assistance payments; and misrepresented the assistance that is available to plaintiffs. (Doc. 18 at 21-23). The initial question before the Court in connection with defendant's motion for judgment on the pleadings is whether § 673 confers an individually enforceable right on plaintiffs which enables them to pursue their claims in federal court under § 1983. Both the statutory text and case law support a finding that plaintiffs do have an individually enforceable right under the statute.

In arguing against a finding that § 673 confers an individually enforceable right with respect to adoption assistance payments, defendant construes the statute too narrowly by focusing on use of the word "may" in one provision of the statute. *See* 42 U.S.C. § 673(a)(1)(B)(ii) ("in any case where the child meets the requirements of paragraph (2), [the state] *may* make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined"). Defendant argues that if Congress's intent had been to make adoption assistance payments mandatory, it would have used the word "shall" instead of "may" with respect to the payment of both nonrecurring adoption expenses under § 673(a)(1)(B)(i) and adoption assistance payments under § 673(a)(1)(B)(ii). (Doc. 15 at 9). Defendant contends that Congress's failure to do so demonstrates that the words "may" and "shall" in the statute were intended to have their usual meanings. (*Id*. at 10).

Defendant is correct that "the word 'may' customarily connotes discretion." *See Jama v. Immig. and Cust. Enf't,* 543 U.S. 335, 346 (2005) (citing *Haig v. Agee,* 453 U.S. 280, 294, n. 26

(1981)).  Defendant is also correct in noting that this "connotation is particularly apt where . . .

'may' is used in contraposition to the word 'shall.'"  *Id*.  Thus, under generally applicable rules

of statutory construction, § 673(a)(1)(B)(ii) viewed in isolation would appear to give the state or

local administrative agency complete discretion in making adoption assistance payments.  Yet,

this construction of § 673(a)(1)(B)(ii) is not supported when that provision is viewed in the

context of the statute as a whole, which includes mandatory "shall" language.  When read as a

whole, the statutory text demonstrates that the three prongs of the *Blessing* standard are met as to

plaintiff's claims under § 1983.

　　First, the language of the statute evinces an intention to benefit adopting parents of

special needs children and the children.  *See Blessing*, 520 U.S. at 340.  Section 673(a)(1)(B)(ii)

presupposes that before the state can exercise its discretion to determine the amount of an

adoption assistance payment under that provision, the state and the adoptive parents have entered

into an "adoption assistance agreement" as mandated under 42 U.S.C. § 673(a)(1)(A) ("Each

state . . . *shall* enter into adoption assistance agreements . . . with the adoptive parents of children

with special needs") (emphasis added).  *See* 42 U.S.C. § 673(a)(1)(B) (setting forth the

requirements for "any adoption assistance agreement entered into by a State with parents who

adopt a child with special needs. . . .").  Once the state and the adoptive parents have entered into

an adoption assistance agreement, the statute requires the state to (1) determine the amount of

adoption assistance payments under § 673(a)(1)(B)(ii) "through agreement" with the adoptive

parents, and (2) consider "the circumstances of the adopting parents and the needs of the child

being adopted" in determining the amount of the payments.  *See* 42 U.S.C. § 673(a)(3) ("[T]he

amount of [adoption assistance payments under subsection (ii)] *shall* be determined through

agreement between the adoptive parents and the State or local agency administering the program

under this section, which *shall* take into consideration the circumstances of the adopting parents and the needs of the child being adopted. . . .") (emphasis added). The "adoption assistance agreement" is "*binding* on the parties to the agreement." 42 U.S.C. § 675(3) (emphasis added). The statute is thus unambiguous in these respects: Adoption assistance payments can be made only under an adoption assistance agreement negotiated between the state and the adoptive parents, which takes into consideration the parents' circumstances and the child's needs, and is binding on the parties.

While there are no Sixth Circuit cases directly on point, decisions that have relied on the mandatory language of 42 U.S.C. § 673 to conclude the statute confers an enforceable right to adoption assistance payments on individuals support a finding that plaintiffs have an enforceable right under § 673 in this case. *In Hensley v. Koller*, 722 F.3d 177 (4th Cir. 2013), adoptive parents challenged a state-wide reduction in adoption assistance subsidies and sought equitable relief and money damages. *Id*. at 180-81. Their claims raised the issue of whether § 673(a)(3), which requires the state to enter into agreements with adoptive parents to determine adoption assistance payments and further requires that such agreed determinations take into consideration the adopting parents' circumstances and the child's needs, created a privately enforceable right under § 1983. *Id*. at 182. The court found that the three *Blessing* factors were satisfied and that § 673(a)(3) created a "limited privately enforceable right" under § 1983. *Id*. at 183. First, the court found the 42 U.S.C. § 673(a)(3) "evinc[es] a clear intent to create a federal right" by using mandatory language requiring that adoption assistance payments "*shall be determined through agreement* between the adoptive parents and the State . . . , which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, *and may be readjusted periodically with the concurrence* of the adopting parents, depending upon changes in

16

such circumstances." *Id.* at 182 (emphasis added by *Hensley*) (citing *ASW*, 424 F.3d at 975-76). Second, the court found that that statute was not "so 'vague and amorphous' that its enforcement would strain judicial competence" because it clearly provided "that a state may not readjust an adoption assistance payment amount without an adoptive parent's 'concurrence,' i.e., agreement or assent." (*Id.*). Finally, the court found that the statute's mandatory language requiring states to enter into adoption agreements with adoptive parents to determine adoption assistance payments, and to "take into consideration the circumstances of the adopting parents and the needs of the child being adopted," left "no ambiguity" as to what states need to do as a condition of receiving federal aid under the Act and made clear that the adopting parents' concurrence was required if the state wanted to readjust payments. *Id.* at 182-83 (citing *ASW*, 424 F.3d at 976).

The decision in *Hensley* supports the conclusion that the three *Blessing* factors are satisfied here. This Court agrees with the Fourth Circuit that § 673, read as a whole, (1) "evinc[es] a clear intent to create a federal right" by using mandatory language requiring that adoption assistance payments "*shall* be determined through agreement between the adoptive parents and the State . . ., which *shall* take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and *may* be readjusted periodically *with the concurrence of the adopting parents*. . . ."; 2) the statute is not "so vague and amorphous" that to enforce it by requiring states to comply with these statutory mandates would "strain judicial competence"; and 3) the statute's mandatory language requiring states to enter into adoption agreements with adoptive parents leaves no ambiguity as to what states must do as a condition of receiving federal aid under the Act. *Id.* at 182-83; *see Blessing*, 520 U.S. at 340-41.

The Ninth Circuit's analysis in *ASW*, 424 F.3d at 970, also supports a finding that the three *Blessing* factors are satisfied in this case. In *ASW*, the Ninth Circuit determined that 42

17

U.S.C. § 673(a)(3) conferred a federal right to individualized adoption assistance payment determinations. *ASW*, 424 F.3d at 975-76. The Ninth Circuit found that the three prongs of the *Blessing* test were satisfied because first, the language of the statute "evinces a clear intent to create a federal right" so as to satisfy the first element. *Id.* Specifically, the statutory text required the state to (1) "engage in an individualized process with each family that takes into account their unique requirements in determining the amount of their adoption assistance payments throughout the duration of their participation in the program." *Id*. The court found the second and third elements were satisfied because "the right to individualized payment determinations that reflect the unique circumstances of the parents and the special needs of their adopted child is a concrete and objective right, the enforcement of which does not 'strain judicial competence.'" *Id*. at 976. Further, the statute was not ambiguous as to what the state was required to do as a condition of receiving federal funding under Title IV-E. *Id.* The court concluded that plaintiffs had asserted a federally enforceable right to individualized payment determinations which they could pursue under § 1983. *Id.* at 978.

Defendant Warren County seeks to distinguish *ASW* from this case based on the issues addressed there and in this case. Defendant asserts that ASW addressed: 1) whether the language of § 673 evinces an intent to confer an entitlement to "individualized payment determinations," and 2) whether the plaintiffs had a right to individual hearings challenging an across-the-board reduction in adoption assistance payments. (Doc. 15 at 13, citing *ASW*, 424 F.3d at 975, 978-79). Defendant asserts that plaintiffs "here have asserted that they have an absolute right to receive some level of adoption assistance . . . and to some minimum amount of money in adoption assistance payments that Warren County must provide." (Doc. 15 at 14). Defendant argues that *ASW* did not resolve this issue and hold there is a right to adoption assistance

payments in each case. (*Id*.). Defendant argues that the holding in *ASW* reinforces defendant's interpretation of § 673 and contradicts plaintiffs' position that there is "an absolute right to some specific level or amount of adoption assistance. . . ." (*Id*.).

The Court disagrees with defendant's framing of the issues presented by plaintiffs' complaint and the applicability of the holding in *ASW* to this case. Plaintiffs here do not claim there is a blanket right to adoption assistance payments in each case where eligibility requirements are met. Plaintiffs instead claim a right to fairly negotiated subsidies and a process that takes into account the parents' circumstances and the child's needs. The *ASW* court's finding that there is "a concrete and objective right" to "individualized payment determinations that reflect the unique circumstances of the parents and the special needs of their adopted child" supports plaintiffs' position that the statute confers an individually enforceable right on adoptive parents and special needs children to fairly negotiated subsidies that take adopting parents' circumstances and the child's needs into account.

Finally, in *Glisson*, 847 F.3d at 378-80, the Sixth Circuit relied on mandatory "shall" language in 42 U.S.C. § 672, to find the plaintiffs had an individually enforceable right to foster care maintenance payments under the federal Child Welfare Act. *See* 42 U.S.C. § 672(a)(1) (the state "*shall* make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . into foster care") (emphasis added). Defendant contends that *Glisson* does not support plaintiffs' position because it involves foster care maintenance payments under 42 U.S.C. § 672, a statute that uses mandatory "shall" language which evinces an enforceable right. (Doc. 15 at 12-13, citing *Glisson*, 847 F.3d at 378-80). Defendant argues that in contrast, 42 U.S.C. § 673 includes no such mandatory language related to adoption assistance payments. The Court disagrees and finds that in making this argument,

defendant reads the statute too narrowly. Read as a whole, § 673 does include mandatory language like that used in § 672 which satisfies the *Blessing* factors and confers a federally enforceable right on plaintiffs.

Defendant contends that the only reported decision to have squarely addressed the issue plaintiffs raise supports a finding that a plain reading of § 673 vests the State with authority to decide in what cases and in what amounts to provide adoption assistance payments. (Doc. 15 at 10-11, citing *Ninemire v. Kansas Dept. of Soc. and Rehab. Services*, 162 P.3d 22, 26 (Kan. 2007)). In *Ninemire*, the adopting parents entered into an adoption assistance agreement with the state under which the parties agreed that the child "was eligible for a monthly adoption assistance payment but set the amount at $0 because there were no special needs identified to justify a monthly subsidy at that time." *Id*. at 24. The adoptive parents subsequently requested an administrative hearing to increase the amount of the payment from $0 to $540 per month, but they did not identify any expenditures specifically for their child in the revised budget they submitted. *Id*. Following a hearing, an administrative hearing officer affirmed the originally agreed upon amount. (*Id*.). The Kansas Supreme Court characterized the plaintiffs' arguments on appeal as follows: (1) the lower court misinterpreted the eligibility requirements under the federal statutes; (2) the lower court misinterpreted the purpose of the federal adoption assistance statutes; and (3) the lower court misinterpreted the law when it found their child did not have any special needs. (*Id*.). The court found it was unnecessary to address the first two arguments because there was no dispute the plaintiffs' child qualified as a special needs child under § 673(c), and the parties further agreed on the purpose of the adoption assistance program. The court characterized plaintiff's third argument as essentially a claim that their child was "entitled to a monthly adoption assistance payment by virtue of her eligibility under Title IV-E as a

special needs child, regardless of whether [the child] actually has any special needs demanding spending"; the plaintiffs "characterized Title IV-E subsidies as 'open ended entitlements,' which provide [their child] with an absolute right to a benefit, granted immediately upon meeting the statutory requirements"; and they posited that the lower court erroneously concluded their child "did not have any special needs, because the federal policies for implementing the statutes include ordinary needs for children who qualify." *Id.* at 25. The court rejected the plaintiffs' argument that their child "should receive an adoption assistance subsidy merely because she is eligible." *Id.* at 26. The court relied on use of the phrase "shall make" as opposed to "may make" in the various provisions of the statute to find that the monthly payment could be set at $0 where the plaintiffs' child had been given a "guarded prognosis" and was not currently being treated for a specific disability or condition. *Id.* at 27. The court found that the local agency had considered the circumstances of the adopting parents as required under the applicable guidelines and therefore had not erred by denying the plaintiffs' request for an increase in the monthly subsidy. *Id.* at 28.

In arguing that the holding in *Ninemire* should apply here, defendant again frames the issue before this Court too narrowly. The *Ninemire* plaintiffs claimed that their child with special needs was entitled to an adoption assistance payment simply by virtue of her eligibility. Plaintiffs do not make that claim here. Plaintiffs concede there are cases where eligible children may properly be found to be entitled to $0 and awarded a subsidy in that amount. Plaintiffs claim the issue here is whether defendant followed the required procedures for establishing adoption assistance subsidies under the statute. Plaintiffs claim defendant did not comply with mandatory statutory procedures requiring the state to negotiate subsidies with adopting families of special needs children and to take into consideration the family's circumstances and the

child's needs. *Ninemire* did not address these claims. The *Ninemire* court's holding that the statute does not mandate an award of adoption assistance payments in some amount to all special needs children simply by virtue of their eligibility is not determinative of whether plaintiffs here have an individually enforceable right under § 673.

Based on the statutory text, and consistent with the above authorities, the Court finds that the three-prong *Blessing* standard is satisfied here. Construed as a whole, 42 U.S.C. § 673 uses mandatory language that imposes obligations on the state to (1) engage in negotiations and reach an agreement with adoptive families of children with special needs who are eligible for adoption assistance payments, and (2) consider specified criteria in establishing the amount of the payment. *Id*. The statute thus confers an individually enforceable right on plaintiffs under the test set forth in *Blessing*, 520 U.S. at 340-41. Defendant has not rebutted this presumption by showing that Congress has "'specifically foreclosed a remedy under § 1983' either expressly 'or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *ASW*, 424 F.3d at 977 ("Section 673(a) does not explicitly foreclose a § 1983 action" and the defendant did not demonstrate that "Congress created a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983") (citing *Blessing*, 520 U.S. at 341). Defendant is not entitled to judgment on the pleadings on plaintiffs' claims under 42 U.S.C. § 673 based on the absence of an individually enforceable right. Plaintiff are not foreclosed from proceeding with their claims under § 1983 on this ground.[2]

---

[2] Defendant argues that plaintiffs' reliance on the federal Child Welfare Policy Manual in support of their claims is misplaced because § 673 is unambiguous. (Doc. 15 at 15-17). The Court need not address this argument in connection with defendant's motion for judgment on the pleadings because the Court finds that 42 U.S.C § 673 confers an individually enforceable right on plaintiffs, irrespective of the language in the Manual.

## B. Exhaustion of administrative remedies is not required.

Defendant argues that plaintiffs have failed to exhaust their administrative remedies, which defendant contends is "a crucial pre-condition" to this lawsuit. (Doc. 15 at 17-18, citing *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir. 2014)). Defendant frames plaintiffs' "core" claims as disagreement with the amounts of adoption assistance defendant provided for their families, and defendant alleges that plaintiffs have "a clear and adequate administrative remedy under Ohio law" that they do not allege is inadequate or illusory. (*Id.*). Defendant asserts that as mandated by federal law, 42 U.S.C. § 671(a)(12)[2], Ohio provides an administrative procedure through which adoptive families who disagree with the state's determination of adoption assistance subsidies can challenge that determination or demand mandatory mediation. (Doc. 15 at 17, citing Ohio Rev. Code § 5101.35(C); Ohio Admin. Code § 5101:2-49-05(H)-(5)). Defendant argues that plaintiffs were required to exhaust their administrative remedies under Ohio law before pursuing their claims that defendant failed to provide them with adoption assistance and subsidies under Title IV-E. (Doc. 15 at 18, citing *S.S. v. Wayne County Children and Youth Services*, No. 3:17-CV-00935, 2018 WL 806470, at *4 (M.D. Pa. Feb. 9, 2018)).

Plaintiffs argue in response that exhaustion of state administrative remedies is not required in a suit brought under 42 U.S.C. § 1983. (Doc. 18 at 25, citing *Vashi v. Charter Tp. of W. Bloomfield, Michigan*, 74 F. App'x 575, 580 (6th Cir. 2003) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)). Plaintiffs seek to distinguish *Wayne County Children and Youth Services*,

---

[2] Section 671(a)(12) requires a State plan under the Act to provide "for granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness."

2018 WL 806470, on the ground the claims in that case were decided under state law and not under § 1983.

It is well-settled that as a matter of federal law a non-prisoner plaintiff is not required to exhaust state administrative remedies prior to bringing a lawsuit under 42 U.S.C. § 1983. *Patsy,* 457 U.S. at 507, 516. Unlike statutes where Congress has created exhaustion requirements for § 1983 cases, *see, e.g.,* 42 U.S.C. § 1997e(a)[4], Title IV-E does not include such an exhaustion requirement. *See* 42 U.S.C. § 670, et seq.

Nor does the provision of an administrative review scheme within a statute mandate the exhaustion of administrative remedies prior to filing a § 1983 claim. In *Glisson*, the Sixth Circuit found that "although the Act requires states to provide for administrative review of denied claims [under 42 U.S.C. § 671(a)(12)], . . . the 'availability of state administrative procedures ordinarily does not foreclose resort to § 1983'" and did not foreclose the plaintiffs from proceeding under § 1983 in that case. *Glisson*, 847 F.3d at 380-81. The *Glisson* court reasoned that without "resort to § 1983, foster families possess no federal mechanism to ensure compliance with the [federal Child Welfare Act]." 847 F.3d at 380.

The Court finds that the Sixth Circuit's holding in *Glisson* applies here because the same administrative procedure provision at issue in *Glisson*, 42 U.S.C. § 671(a)(12), applies to the adoption assistance payments in this case. As in *Glisson*, the Act requires that states provide for administrative review of denied claims under 42 U.S.C. § 671(a)(12). However, the availability of that state administrative procedure does not foreclose claims under § 1983. *Glisson*, 847 F.3d at 381. Plaintiffs challenge defendant Warren County's failure to fairly negotiate their subsidies

---

[4] 42 U.S.C. § 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

24

and provide the process they are due under § 673. Absent recourse under § 1983, plaintiffs do not have a federal remedy to challenge defendant's alleged failure to comply with these obligations under § 673. Plaintiffs therefore are not required to exhaust administrative remedies under Ohio law before pursuing their § 1983 claims in federal court.[5] Plaintiffs' claims should not be dismissed for failure to exhaust their administrative remedies under Ohio law.

### C. Plaintiffs have not stated a claim for violation of the right to familial association.

Plaintiffs claim that defendant has also violated their rights of familial association and due process of law under the First and Fourteenth Amendments to the United States Constitution. Defendant argues that plaintiffs have not pled a claim for denial of their constitutional right to familial association. (Doc. 15 at 18-20). Defendant notes that both sets of parents named as plaintiffs have adopted the children at issue and there are no factual allegations to show that Warren County impaired their ability to do so or endangered the process once it was completed. (*Id*. at 19, citing Doc. 1, ¶¶ 59, 87). Defendant asserts that at most, plaintiffs have alleged that Warren County failed to ensure that adoptive parents are not financially impacted by the offset of "regular expenses relating to adding a child to the family," which defendant argues is "a far cry from violation of the right to familial association." (*Id*. at 19).

Plaintiffs claim that defendant has infringed their right to familial association by violating § 673 over a long time period and thereby deterring them from adopting more children. (Doc. 18 at 26). Plaintiffs allege that defendant has retaliated against them "through their pursuit of familial association" and "punished" them for adopting children by denying them additional subsidy payments in violation of § 673. (*Id*. at 28, citing *Plyler v. Doe*, 457 U.S. 202, 205, 220

---

[5] The Court is not persuaded that *Wayne County Children and Youth Services*, 2018 WL 806470, cited by defendant, supports a different result. In that case, the court relied on Pennsylvania state law for the general proposition that as a matter of state law administrative exhaustion is required before resort may be had to judicial relief.

(1982) (stating that "legislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice" and holding that excluding children who had not been "legally admitted" into the country from public schools violated the equal protection clause)). Adoptive Family # 1 alleges they have "chosen to not adopt again," and plaintiffs claim that they "refuse to foster any children through Warren County because of their interactions with Defendant, which directly interferes with their right to familial association and the right of the children in foster care to develop permanent, stable relationships." (Doc. 18 at 28). Plaintiffs argue that the cases defendant relies on to argue parents seeking an adoption do not have a protected constitutional interest as parents does not apply to prospective adoptive parents seeking to adopt foster children. (*Id.* at 29). Plaintiffs argue that under the "unique interests in this case, foster parents who have already established relationships with children available for adoption, who by definition have already had their familial relationship with their biological family terminated, have a constitutionally protected interest in the creation of a permanent family relationship." (*Id.* at 30).

"The Constitution protects two distinct types of association: (1) freedom of expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment." *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004); *see also Strehlke v. Grosse Pointe Pub. Sch. System*, 654 F. App'x 713, 723-24 (6th Cir. 2016). "[I]ntimate association claims, such as the right to family association, are generally raised under the Due Process Clause of the Fourteenth Amendment." *Kolley v. Adult Protective Services*, 725 F.3d 581, 587 (6th Cir. 2013). The types of intimate human relationships that qualify for constitutional protection are those that "'attend the creation and sustenance of a

family[,]' including marriage, childbirth, raising and educating children, and cohabitation with relatives, [and] personal friendships and non-marital romantic relationships." *Strehlke*, 654 F. App'x at 723-24 (citing *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 598 (6th Cir. 2013) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984); *Johnson v. City of Cincinnati*, 310 F.3d 484, 499 (6th Cir. 2002)).

The "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Anderson*, 371 F.3d at 881 (citing *Roberts*, 468 U.S. at 617-18); *see also Strehlke*, 654 F. App'x at 723-24. A "direct and substantial" burden on intimate associations will be found "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]." *Strehlke*, 654 F. App'x at 723-24 (citing *Anderson,* 371 F.3d at 882).

Plaintiffs claim that defendant, through its long history of violating § 673, has violated their right to familial association by "deter[ring them] from adopting more children from Warren County." However, plaintiffs have not cited any authority that holds prospective adoptive parents have a protected liberty interest in the future adoption of an unidentified child. Nor have plaintiffs alleged any facts to show that defendant has placed a substantial burden on their right to adopt a child in the future. Even accepting as true plaintiffs' allegations that defendant has a history of violating § 673, plaintiffs have not alleged facts which suggest that individuals who

wish to adopt children in Warren County are "absolutely or largely prevented" from doing so by defendant's actions. *Strehlke*, 654 F. App'x at 723.

Plaintiffs also appear to claim a deprivation of the right to familial association on behalf of "foster parents who have already established relationships with children available for adoption, who by definition have already had their familial relationship with their biological family terminated. . . ." (Doc. 19 at 25). Plaintiffs allege that foster parents who have formed relationships with these children "have a constitutionally protected interest in the creation of a permanent family relationship." (*Id.*). However, plaintiffs have not cited any binding authority which holds that the foster care relationship is either (1) a constitutionally protected relationship or interest, or (2) an "intimate association" that is entitled to constitutional protection under the First or Fourteenth Amendment. The Sixth Circuit has "hesitate[d] to characterize [the foster care] relationship as a constitutionally protected liberty interest," finding that "[t]he nature of the foster care relationship is distinctly different from that of the natural family; namely, it is a temporary arrangement created by state and contractual agreements." *See Renfro v. Cuyahoga County Dept. of Human Services*, 884 F.2d 943, 944 (6th Cir. 1989) (citing *Sherrad v. Owens*, 484 F. Supp. 728 (W.D. Mich. 1980), *aff'd.*, 644 F.2d 542 (6th Cir. 1981)); *see also Zak v. Pilla*, 698 F.2d 800, 801 (6th Cir. 1982) ("Even where parents have enjoyed temporary custody of an adoptive child under state adoption agency procedures, they do not necessarily acquire a constitutionally protected interest so as to invoke federal jurisdiction") (citing *Drummond v. Fulton County Dept. of Fam. and Children's Services*, 563 F.2d 1200 (5th Cir. 1977) ("The very fact that the relationship before us is a creature of state law, as well as the fact that it has never been recognized as equivalent to either the natural family or the adoptive family by any court, demonstrates that it is not a protected liberty interest, but an interest limited by the very laws

which create it.")); *K.K. v. Berks County*, 5:15-CV-00475, 2016 WL 1274052, at *4-5 (E.D. Pa. Mar. 31, 2016) (recognizing that "attempt[s] to establish a due process liberty interest between foster parents and children have continued to fail" and that courts have declined to recognize the existence of any liberty interest in a foster family's relationship under state law, including Ohio law) (citing *Renfro*, 884 F.2d at 944). Plaintiffs have not cited any authority that holds the foster care relationship is constitutionally protected, and the marriage equality cases plaintiffs cite to support this proposition do not address foster care relationships. Thus, plaintiffs have failed to state a claim for relief insofar as they premise their claim for violations of the constitutional right to familial association on the existence of a foster parent/foster child relationship.

Even if the foster care relationship was a constitutionally protected liberty interest or intimate relationship, plaintiffs do not allege that they are currently serving as foster parents and have established relationships with foster children who are available for adoption. To the contrary, plaintiffs allege that they have already entered into familial relationships with children for whom they previously cared under a foster care arrangement and have since adopted. Thus, to the extent plaintiffs allege that Warren County has deprived them of their right to form familial relationships with their foster children, plaintiffs have failed to state a claim for relief against Warren County.

Plaintiffs have not stated a claim for violation of their right to familial association based on defendant's alleged history of violating § 673, which plaintiffs claim deterred them from adopting foster children. Plaintiffs have not shown that defendant deprived them of a protected liberty interest or that defendant has placed a "direct and substantial burden" on their ability to form intimate relationships with children available for adoption in Warren County. Plaintiffs' claim for violation of the right to family association should be dismissed.

**V. Conclusion**

The Court finds that plaintiffs have an individually enforceable claim under 42 U.S.C. § 673. Plaintiffs should be permitted to pursue their claims for violations of § 673 under 42 U.S.C. § 1983. Plaintiffs have not stated a plausible claim for relief under 42 U.S.C. § 1983 for violation of their right to familial association. This claim should be dismissed.

### IT IS THEREFORE RECOMMENDED THAT:

Defendant's motion for judgment on the pleadings (Doc. 15) be **GRANTED** in part and **DENIED** in part. The motion should be **GRANTED** as to plaintiffs' claims for violation for their constitutional right to familial association and this claim should be **DISMISSED**. The motion should be **DENIED** as to plaintiffs' claims for violation of 42 U.S.C. § 673.

Date: _6/25/18_

Karen L. Litkovitz
United States Magistrate Judge

30

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ADOPTIVE FAMILY #1 AND THEIR
DAUGHTER A, et al.,
     Plaintiffs,

Case No. 1:18-cv-179

Dlott, J.

Litkovitz, M.J.

vs.

WARREN COUNTY, OHIO/WARREN
COUNTY BOARD OF
COMMISSIONERS,
     Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).