# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ADOPTIVE FAMILY #1 AND THEIR DAUGHTER A, et al., <br> Plaintiffs, <br><br> vs. <br><br> WARREN COUNTY, OHIO/WARREN COUNTY BOARD OF COMMISSIONERS, <br> Defendant. | Case No. 1:18-cv-179 <br> Dlott, J. <br> Litkovitz, M.J. <br><br> **REPORT AND RECOMMENDATION** |

This matter is before the Court on the parties' joint motion to approve class action settlement (Doc. 116), plaintiffs' hearing memorandum in support of the motion to approve class action settlement (Doc. 122), plaintiffs' submission of time and expense record in support of plaintiffs' fee in class action settlement (Doc. 124), and the oral arguments presented by counsel at the fairness hearing on May 30, 2019. For the reasons stated below, the undersigned magistrate judge recommends that the motion to approve the class action settlement be granted.

## I. Background

### a. Claims at Issue

This class action challenges Warren County's adoption assistance agreements with the adoptive families of children determined to have "special needs" under the Title IV-E adoption assistance program. Plaintiffs Adoptive Families #1, #2, and #3 are families who have adopted children with special needs after serving them as foster parents.

Title IV-E of the Social Security Act, 42 U.S.C. § 670 et seq., governs adoption assistance subsidies for adoptive parents. To receive federal funding under Title IV-E, states must develop a plan for adoption assistance and obtain approval of that plan from the United States Secretary of Health and Human Services. 42 U.S.C. § 671. A state with an approved plan

"shall enter into adoption assistance agreements . . . with the adoptive parents of children with special needs." 42 U.S.C. § 673(a)(1)(A). A child with special needs is one who is available for adoption and who meets certain criteria that have traditionally made children less likely to be adopted.

Ohio has an approved state plan for adoption assistance and has agreed to be bound by all of the federal requirements under Title IV-E. Defendant Warren County administers adoption assistance subsidies through its public children services agency, Warren County Children Services (WCCS). *See* Ohio Admin. Code 5101:2-49-01. Warren County Children Services determines the initial and continuing eligibility for adoption assistance subsidies. *Id.*

Plaintiffs challenge WCCS's performance of its obligations to enter into Adoption Assistance agreements with the adoptive families of children determined to have special needs under the Title IV-E Adoption Assistance program. The program is meant to provide financial support to families who adopt children with special needs from the public child welfare system. Plaintiffs allege that WCCS has failed to comply with federal law. Defendant denies the allegations and claims it has followed federal law.

Specifically, plaintiffs allege, and defendant denies, that in the past Warren County:

a. Improperly required eligible children to have a diagnosis to qualify for adoption assistance payments;

b. Improperly restricted assistance to medical needs rather than all the anticipated and ordinary needs of the child;

c. Improperly refused to consider the family's circumstances in determining the amount of assistance, including but not limited to lost wages in the family attributable to the adoption; and

d. Has not always provided accurate information to families eligible for adoption assistance.

2

Defendant asserts that it has complied with all federal and state law and regulations, and that it is obligated to obtain reasonable documentation of requests for federal, state and county tax dollars for adoption assistance subsidies and to negotiate based on the unique and individualized circumstances of each family.

Plaintiffs allege that as of the filing of this lawsuit, these practices caused WCCS to provide the lowest average Adoption Assistance subsidies in the State of Ohio. WCCS denies this allegation. WCCS alleges that the subsidies were agreed to based on the circumstances of each family, the resources available to each family, and the requirements of federal and state law.

### b. The Settlement Class

The parties agree to certification of the following class under Fed. R. Civ. P. 23(b)(2) for the purposes of settlement:

> All adoptive parents and their adopted children who, as of the date of the filing of this lawsuit and/or through the date of the fairness hearing, were eligible to receive subsidies under Title IV-E of the Adoption Assistance and Child Welfare Act and who fall under the jurisdiction of defendant Warren County, Ohio and who receive or received less than $250.00 in monthly adoption assistance payments.

### c. Preliminary Approval

On April 19, 2019, the parties filed their joint motion for approval of a class settlement agreement. (Doc. 116). The Court determined that the proposed settlement between plaintiffs and defendant appeared, upon preliminary review, to be within the range of reasonableness and ordered that notice be submitted to the class members for their consideration and for a fairness hearing under Fed. R. Civ. P. 23(e). (Docs. 117, 121).

### d. The Settlement Agreement

The Settlement Agreement includes the following key provisions. First, the parties have agreed on procedures and criteria that will help guide WCCS and all families receiving subsidies on the criteria that will be considered to reach agreement on adoption assistance. *See* Doc. 116-2 at PAGEID 3476-78. Second, defendant has agreed to provide these criteria to staff members and train them on its use. Third, the parties have agreed that these criteria will be implemented through a revised adoption subsidy worksheet (Doc. 116-3 at PAGEID 3479-3486) and a revised annual letter reminding families of the right to renegotiate (Doc. 116-3 at PAGEID 3487). Fourth, the settlement narrows the class definition from that recommended by the undersigned magistrate judge (*see* Doc. 106), focusing the relief on those parents receiving less than $250 per child per month. Fifth, it provides for class members to engage in redeterminations and renegotiations of current subsidy agreements. Class members will receive an agreed notice from class counsel advising them of their right to participate in the process for Redetermination and Renegotiation set out in the Settlement Agreement. Sixth, Warren County, pursuant to OAC 5101:2-49-03(A)(2)(e), will have each child evaluated as to whether severe separation and loss would occur if the child were placed in another setting due to the significant ties with the prospective adoptive parent(s), if no other criteria is met that qualifies them for a monthly adoption assistance amount. Seventh, class counsel shall monitor compliance with the Settlement Agreement for 24 months after the court approves it, and Warren County agrees to cooperate in these efforts. Eighth, the parties agree that class counsel will be paid one hundred thousand dollars ($100,000) as full compensation for all past and future fees and expenses relating to this litigation, including future monitoring.

## II. Analysis

### a. The Parties' Settlement is Fair and Reasonable.

In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court considers seven factors in making this determination: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). *See also Doe v. Déjà Vu Consulting, Inc.*, __ F.3d __, 2019 WL 2336927, at *4 (6th Cir. June 3, 2019) (applying *UAW* fairness factors). Each of these factors weighs in favor of approving the parties' settlement.

### i. The Risk of Fraud or Collusion

The undersigned finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion. The settlement is the product of arm's-length negotiations of the parties with the assistance of experienced counsel on both sides. Negotiations have been supervised by either a United States Magistrate Judge or an experienced private mediator. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *2 (S.D. Ohio Jan. 18, 2019) (quoting *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)). The County agency director, prosecutor, and outside counsel have guided the County, and class counsel have guided the class representatives. In addition, the class

5

representatives have been fully engaged in all aspects of settlement. This factor favors approval of the settlement.

### ii. The Complexity, Expense, and Likely Duration

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3-4 (S.D. Ohio Aug. 17, 2018) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (internal citation omitted)). As counsel explained at the hearing, in this case the duration and complexity factors go hand-in-hand. This case involves complex factual and legal issues concerning how Title IV-E adoption assistance benefits are and should be provided to families who have adopted children with special needs. The parties have vigorously litigated these issues for more than one year. Plaintiffs acknowledge that the defenses raised by Warren County in its motions for judgment on the pleadings and to dismiss would likely be appealed to the Sixth Circuit if plaintiffs were to prevail on summary judgment or at trial, thereby further delaying a final resolution of this matter. Even if plaintiffs would ultimately be successful after years of litigation and appeals, the resultant delay would do nothing to address the daily and immediate needs of the adoptive children and their parents in the interim. Any resources that can help families now through the settlement process are more valuable than resources that would not be received until after the children are grown.

As discussed at the hearing, both parties recognize the costs and risks associated with continued litigation. Defendant acknowledged that continued litigation in this case would be lengthy and would not benefit the agency. Continuing with the litigation would result in additional time and effort spent preparing for litigation, including preparing for and taking

6

additional witness and expert depositions, reviewing records, and preparing for trial. Settling the case now will direct resources that would otherwise go toward attorney fees to facilitating redeterminations and renegotiations for adoptive families.

Finally, counsel for both parties agree that the expedited process of settlement will provide clear and increased guidance to both the agency and adoptive families as they move through the negotiation or renegotiation process.

### iii. The Amount of Discovery Engaged in by the Parties

The Court considers the amount of discovery engaged in by plaintiffs and defendant in assessing the adequacy of the proposed settlement. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). The parties engaged in extensive discovery related to the plaintiffs' motion to certify a class, including some discovery going to the merits of plaintiffs' claims. Defendant has produced the extensive WCCS files on Adoptive Families #1 – 7, which consist of thousands of pages of records. Defendant has also produced the various policies, forms and materials related to adoption and Adoption Assistance. Plaintiffs took depositions of one WCCS adoption caseworker, the director of WCCS, and the former director of WCCS. Defendant took 15 depositions: the five putative class representatives, the mother of Adoptive Family #1, and the mother and father of Adoptive Families #2 and #3; the three mothers and three fathers of declarant families #4, #5, #6, and #7; two experts; and the Title IV-E Unit Supervisor at the Ohio Department of Job and Family Services. The Court finds that this exchange of information is sufficient to inform the settlement negotiations of experienced counsel.

### iv. The Likelihood of Success on the Merits

"Of the *UAW* factors, '[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.'" *Déjà Vu Consulting, Inc.*, __ F.3d __, 2019 WL 2336927, at *4 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). The Court must "closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive." *Id.* In assessing the proposed settlement, the court is not required "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Both parties acknowledge that neither is guaranteed success in this matter should the litigation move forward. There are multiple complicated legal issues involving subsidies paid in substantial part by state and federal funds, and multiple factual and legal issues that could lead to favorable or negative results for either side. Warren County has preserved the right to appeal the motion for judgment on the pleadings and the ruling on a seminal dispute in this case: whether plaintiffs have an enforceable right to an adoption assistance subsidy under the statute, given defendant's contention that it has discretion in determining when and in what amounts to provide adoption assistance subsidies. Additionally, Warren County has preserved for appeal an issue it raised in a motion to dismiss: whether the State of Ohio is an indispensable party whose absence in this case requires dismissal of the action or joinder of the State of Ohio. While the undersigned has recommended that a class be certified based on the amended class definition proposed by plaintiffs at the class certification hearing, defendant has preserved its right to object

8

to that recommendation, and a ruling on the Report and Recommendation has been stayed pending resolution of the instant motion to approve the Settlement Agreement. Finally, there has not yet been a trial determining the ultimate issues. Plaintiffs acknowledge that it is possible the class could achieve nothing either on summary judgment motions, at trial, or on appeal.

Under the proposed Settlement Agreement, the parties have agreed on procedures and criteria that will help guide WCCS and all families receiving subsidies on the criteria that will be considered to reach agreement on adoption assistance. Further, that agreement on criteria will be implemented through a revised adoption subsidy worksheet and a revised annual letter reminding families of the right to renegotiate. The compromise reached in this settlement narrows the class definition from that recommended by the undersigned magistrate judge, focusing the relief on those parents receiving less than $250 per child per month. Moreover, it provides for class members to engage in redeterminations and renegotiations of current subsidy agreements. And it bears repeating that class members will benefit from those provisions now, as opposed to possibly sometime in the distant future. The Court determines that the benefits of the relief set forth in the proposed Settlement Agreement outweigh the uncertainty of success plaintiffs face on summary judgment, at trial, or on appeal.

### v. The Opinions of Class Counsel and Class Representatives

The judgment of the parties' counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. GM*, No. 05-cv-73991, 2006 WL 891151, at *18 (E.D. Mich. March 31, 2006) (citing *Mich. Hosp. Ass'n v. Babcock*, No. 5:89-cv-70, 1991 U.S. Dist. LEXIS 2058, at *6 (W.D. Mich. Feb. 11, 1991) ("It is . . . well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.")).

Counsel for both plaintiffs and defendant have extensive experience in class action, civil rights, social reform, and public benefits litigation. They unanimously recommend this settlement to the Court and the class as fair and reasonable. At the hearing, class counsel expressed that the proposed Settlement Agreement properly balances the need for a prompt and fair resolution for special needs children against the risk of loss in this case. Moreover, the Settlement Agreement will better facilitate the preservation of a positive relationship between families and the County, who will continue to work together in the future. At least one of the class representatives attended each of the critical proceedings in the litigation and provided guidance to class counsel throughout the litigation process. The class representatives agree that the settlement is fair and reasonable. This factor weighs in favor of approval of the settlement.

### vi. The Reaction of Absent Class Members

The class's reaction supports approval. Because each of the absent class member's identity was known, notice of the proposed settlement was sent to each. Counsel fielded questions from 21 families regarding the notice prior to the fairness hearing, and each expressed a willingness to participate in the settlement. There were no objections to the Settlement Agreement from absent class members.

### vii. The Public Interest

"Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.'" *Déjà Vu Consulting, Inc.*, 2019 WL 2336927, at *8 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). In this case, both WCCS and adoptive families have an ongoing relationship by the very nature of the adoption assistance program available to special needs children. The Settlement Agreement is

designed to bring clarity to and facilitate the process of assessing adoption assistance payments for WCCS and adoptive families. To the extent the process arrived at through the Settlement Agreement promotes and engenders a more positive experience for adoptive families and those considering adoption, this process may facilitate the adoption of more children with special needs. As the settlement confers immediate benefits on the Settlement Class, avoids the risks and expense of further litigation, and conserves judicial resources, the undersigned determines that the public interest favors approving the settlement.

In summary, after considering all of the relevant factors, the undersigned concludes that the Settlement Agreement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

**b. Attorneys' Fees**

The Court is tasked with ensuring that the attorneys' fees sought are reasonable. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"). Generally, when calculating a reasonable attorney's fee, the starting point is with counsel's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate. *See Volz v. Coca Cola Co.*, No. 1:10-cv-879, 2015 WL 1474958, at \*1 (S.D. Ohio Mar. 31, 2015) (evaluating reasonableness of unopposed motion for class counsel attorney fees and costs under lodestar method) (citing *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (in turn citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). In evaluating the reasonableness of the requested amount of attorneys' fees, the Court may consider additional factors, including: (1) the value of the benefit rendered for the class; (2) society's stake in rewarding the attorneys who produce such benefits; (3) whether the services were

undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of the attorneys involved. *Volz*, 2015 WL 1474958, at *1 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

In this case, class counsel's lodestar, based upon the submissions reviewed by the Court, is $476,623.25. Class counsel's expenses are $15,813.95, for a total in fees and expenses of $492,441.37. Under the Settlement Agreement, "Class counsel shall be paid one hundred thousand dollars ($100,000) as full compensation for all past and future fees and expenses relating to this litigation, including future monitoring." (Doc. 116-1 at PAGEID 3472). Defendant agrees with this amount and no class members have filed objections to this amount. The amount of fees and expenses in the proposed Settlement Agreement amount to less than one-quarter of class counsel's total of fees and expenses.

As discussed above, the benefits achieved by the class through settlement are substantial and provide relief to the class now, instead of potentially affording relief sometime in the distant future. "Society has benefited because this fee award encourages qualified counsel to bring inherently difficult and risky but beneficial class action cases." *Volz*, 2015 WL 1474958, at *2 (citing *In re Cardizem*, 218 F.R.D. at 534). The billing records submitted by class counsel more than amply support the value of the services recorded on an hourly basis and reflect the average attorney rates which are reasonable for the communities of practice. Class counsel is extremely skilled and experienced and obtained valuable relief for the class in the course of this lawsuit. The attorney fee award was the product of arm's-length negotiations, which weighs in favor of approval of the amount proposed in the Settlement Agreement. The Court finds that class counsel's hourly rates are appropriate and, given the extensive legal work performed and the

substantial compromise made as to the fee, the Court finds the request for fees and expenses set forth in the Settlement Agreement to be fair and reasonable.

**IT IS THEREFORE RECOMMENDED THAT** the parties' joint motion to approve class action settlement (Doc. 116) be **GRANTED**.

Date: 6/5/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ADOPTIVE FAMILY #1 AND THEIR DAUGHTER A, et al., <br> Plaintiffs, | Case No. 1:18-cv-179 <br> Dlott, J. <br> Litkovitz, M.J. |
| vs. | |
| WARREN COUNTY, OHIO/WARREN COUNTY BOARD OF COMMISSIONERS, <br> Defendant. | **REPORT AND RECOMMENDATION** |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).